### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| **v.** ) | **Criminal No. 17-cr-10389-DJC-1** |
| ) | |
| **ROSALINE VALDEZ FERNANDEZ,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                          **March 1, 2023**

### Introduction

Upon the motion of Defendant Rosaline Valdez Fernandez ("Valdez Fernandez") for review of the November 22, 2022 Order detaining her pending trial (the "Detention Order"), D. 112, the Court has made an independent, *de novo* review, see United States v. Pierce, 107 F. Supp. 2d 126, 128 (D. Mass. 2000); United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990), of the record and counsel's arguments. For the reasons stated below, the Court DENIES the motion to revoke the Detention Order, D. 112, and that order shall remain in place.

### Standard of Review

In entering the Detention Order, the Court (Hennessy, M.J.) concluded that no condition or combination of conditions would reasonably assure Valdez Fernandez's appearance or the safety of any other person and the community. D. 106 at 15:13–20:17 (citing Valdez Fernandez's history of and continued engagement in drug trafficking involving large quantities of controlled substances, limited connections to the United States, and significant ties to Mexico). For such finding to warrant pretrial detention, there must be a showing, (1) upon a preponderance of the

1

evidence, that no condition or combination of conditions will reasonably assure the defendant's appearance, or (2) upon clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community.  18 U.S.C. § 3142(e); United States v. DiGiacomo, 746 F. Supp. 1176, 1180–81 (D. Mass. 1980).   In determining whether there are conditions of release that will reasonably assure the defendant's appearance and public safety as required, the Court must consider the factors under 18 U.S.C. § 3142(g) including the nature and circumstances of the offenses charged; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger that the defendant's release would pose.  The Court addresses these factors in the discussion below.

## Factual Allegations Leading to Present Charge

Valdez Fernandez is charged with conspiracy to possess with intent to distribute and conspiracy to distribute one kilogram or more of heroin and 400 grams or more of fentanyl in violation of 21 U.S.C. § 846.  D. 3.  This charge arose out of a 2016 wiretap investigation into a drug trafficking operation distributing large quantities of heroin, fentanyl and cocaine.  D. 113 at 2; D. 3 at 1.  Valdez Fernandez was intercepted coordinating drug transactions.  D. 113 at 2 (noting that she was intercepted on phones used by the lead targets of the drug trafficking operation negotiating the sale of kilogram quantities of fentanyl).    In July 2016, Valdez Fernandez and a co-conspirator rented a residence in the Providence, Rhode Island area to coordinate drug shipments from Mexico.  Id.  In December 2016, law enforcement arrested twenty defendants in connection with the investigation and seized approximately seven kilograms of cocaine, heroin and fentanyl, and $450,000.  Id.  At the time of the 2016 arrests, Valdez Fernandez was believed to be in Mexico, D. 113 at 3, where her family resides, she owns property and maintains

citizenship, D. 112-2 at 2.  On December 20, 2017, Valdez Fernandez and three co-defendants were indicted on the present charge, D. 3, but she remained a fugitive until her arrest on June 28, 2022.  D. 113 at 3.  On that date, she was arrested by Drug Enforcement Administration ("DEA") officers in New York after attempting to deliver three kilograms of fentanyl to a cooperating source.  Id.; Det. Hrg. Ex. 1.

**Procedural History**

After a detention hearing held on November 10 and November 22, 2022, D. 101, D. 103, D. 105-06, the Court (Hennessy, M.J.) ordered that Valdez Fernandez be detained pending trial, determining that that she posed both a flight risk and a potential danger to the community.  D. 106 at 15:13–14.  Valdez Fernandez has now appealed the Detention Order.  D. 112.  After briefing by both sides, D. 112-13, and a review of the transcript and exhibits filed in connection with the detention hearing, and oral argument from counsel, the Court took the matter under advisement. D. 119.

**Discussion**

*Nature and Circumstances of the Charge.*  In considering the factors under 18 U.S.C. § 3142(g), the Court notes the following.  As to the nature and circumstances of the criminal offense Valdez Fernandez allegedly committed, she has been charged with conspiracy to possess with intent to distribute and to distribute heroin and fentanyl in violation of 21 U.S.C. § 846.  D. 3 at 1. Specifically, it is alleged that Valdez Fernandez and her co-defendants conspired to distribute more than one kilogram of heroin and more than 400 grams of fentanyl.  Id. at 1–2.

This drug charge in and of itself is a serious charge carrying a mandatory minimum ten-year sentence.  21 U.S.C. §§ 841, 846.  As a result, Valdez Fernandez bears the burden of producing some evidence to rebut the presumption that no combination of release conditions that

will reasonably assure her appearance or public safety.  18 U.S.C. § 3142(e)(3)(A); United States v. Rebollo-Andino, 312 F. App'x 346, 348 (1st Cir. 2009).  On an independent review of the record, the Court concludes that Valdez Fernandez has at least arguably rebutted the presumption. Valdez Fernandez is married and lives in an apartment with her husband in the Bronx, New York. D. 106 at 17:7–8.  Her spouse, Ysmael Perez ("Perez"), attended her detention hearing and appeal hearing and has provided her passport to defense counsel.  D. 105 at 14:11–14; D. 106 at 15:7-8. In connection with the detention hearing, Pretrial Services recommended that if the Court decided to release her, it could, among other conditions, require a $50,000 unsecured bond.  D. 106 at 19:5-7; D. 112-2 at 4.  In support of the present appeal motion, Perez is prepared to post a $15,000 secured bond raised from Valdez Fernandez's extended family.  D. 112 at 4.

The Court assumes that Valdez Fernandez has rebutted the presumption and does not apply it here.  Even without the benefit of this presumption, however, the Court concludes the government has carried its burden of showing that no condition or combination of conditions will reasonably assure Valdez Fernandez's appearance or the safety of any other person and the community.  The charges against Valdez Fernandez in this case arise out of the 2016 wire investigation of her and others in a large-scale drug trafficking operation.  D. 113 at 2.  Valdez Fernandez was intercepted over the wiretap in Massachusetts and a contemporaneous wiretap in Arizona.  D. 105 at 4:23–5:23.  At the time of the takedown and arrest of most of the others involved in the drug trafficking operation in December 2016, Valdez Fernandez was "nowhere to be found" and was believed to be in Mexico.  D. 105 at 7:2–5.  She has remained at large on this serious charge for over five years.  D. 113 at 3.

She was not apprehended until June 28, 2022 when she was arrested for distributing a large quantity of fentanyl.  Id.  As to that transaction, Valdez Fernandez was the contact given to the

cooperating source ("CS") by the supplier.  D. 104; Det. Hrg. Ex. 2 at 1.  She not only communicated by phone with the CS to make the arrangements for the transaction, but provided a sample of fentanyl to the CS and arrived with three kilograms of fentanyl in hand to deliver to the CS when she was arrested.  Det. Hrg. Ex. 1 at 2, 4; Det. Hrg. Ex. 2 at 1.  Valdez Fernandez was driven to or from both meetings with the CS by her husband, Perez, and there was another male present whom the government suggests may have been conducting countersurveillance.  Det. Hrg. Ex. 1 at 2–3; Det. Hrg. Ex. 2 at 1–2.  Given her alleged involvement in the drug trafficking operation in Massachusetts in 2016, D. 113 at 3, the lack of accounting of her residency and employment since that time, D. 112-2 at 2, and her arrest in June 2022 in New York City for allegedly engaging in similar, criminal conduct with a large quantity of fentanyl, it is not unreasonable for the government to suggest that Valdez Fernandez has continued to participate in organized trafficking of large quantities of controlled substances in the interim.  D. 106 at 8:7–12.

*Weight of Evidence*.  The evidence supporting the indictment includes communications intercepted during federal wiretap investigations, surveillance and seizure of large amounts of money and drugs.  D. 113 at 2.  This Court is familiar with the nature of this evidence, having presided over the pleas and sentencings of the numerous other members of the drug trafficking operation.  See United States v. Cordero et al., No. 16-cr-10337-DJC.  There appears to be substantial evidence supporting the government's case, including intercepted communications that allegedly shows that Valdez Fernandez was coordinating drug transactions.  D. 105 at 5:2–23.

*Criminal History*.  Apart from the present offense and the pending New York drug charges, Valdez Fernandez has no criminal history.  Now, however, in addition to this federal offense, Valdez Fernandez faces charges in New York for the fentanyl trafficking that led to her arrest and which carries a potential eight-year minimum sentence if she is convicted.  See N.Y. Penal Law

§§ 70.71(2)(b)(i), 220.21; D. 113 at 3.  This is in addition to her sentencing exposure in this case where she faces a ten-year minimum mandatory sentence, 21 U.S.C. §841(b)(1)(A) and for which she is not safety-valve eligible because of her alleged leadership role in the conspiracy.  D. 105 at 10:2–5; U.S.S.G. § 5C1.2(a)(4).

*Personal History and Characteristics*.  The Court has also considered Valdez Fernandez's personal history and characteristics.  She is 47 years old and was born in Mexico.  Valdez Fernandez's connections to the United States are, at best, tenuous.  As noted above, Valdez Fernandez's exact whereabouts since 2016 are unclear.  Her Mexican passport shows that she entered the United States via Los Angeles in October 2021.  D. 105 at 14:10–20; D. 106 at 10:1–8.  Valdez Fernandez also traveled between Colorado and North Carolina in October 2021.  D. 106 at 7:23–24; D. 113 at 6.  Valdez Fernandez met her husband around this time.  D. 113 at 6.  The two moved into their current apartment in the Bronx, New York in February 2022 before marrying in March 2022.  D. 106 at 8:1–2; D. 113 at 6.  The Court infers that Valdez Fernandez at some point left the United States, because her passport shows that she re-entered on April 2, 2022.  D. 106 at 10:9–14.

Valdez Fernandez's connections to Mexico are comparatively extensive.  Valdez Fernandez remains a Mexican citizen with bank accounts and a mortgage on a house in Mexico.  D. 106 at 17:11–19; D. 113 at 6.  Her family, including her siblings and children, reside in Mexico.  D. 106 at 8:3–4, 17:11–14; D. 112-2 at 2; D. 113 at 6; E.D.N.Y. PTS Rep. (dated Sept. 13, 2022) at 2 (reflecting that Valdez Fernandez said that her three children reside in Mexico).  Valdez Fernandez reported that she has also traveled to Egypt, Germany and Croatia, but did not provide the dates of her travel.  D. 106 at 7:21–24; D. 113 at 6.  Defense counsel suggested at the detention hearing that this international travel occurred before she obtained her current passport.  D. 106 at

11:1–11.  Valdez Fernandez also did not provide any residential addresses predating her current Bronx apartment.  D. 106 at 7:25–8:2; D. 113 at 6.  These facts, in combination with the offense charged, indicate that Valdez Fernandez is a significant flight risk.

*Nature and Seriousness of Danger Posed by Release*.  Based upon a *de novo* review of these factors under Section 3142(g), this Court concludes by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Valdez Fernandez's appearance and by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of others and the community.

*Proposed Release Plan*.  The Court has considered the conditions of release that defense counsel has advocated, including but not limited to home detention with electronic monitoring, surrender of her passport and a $15,000 secured bond posted by her husband.  D. 112 at 1–2.  The Court acknowledges that the secured bond addresses some of the Court's (Hennessy, M.J.) concerns regarding the effectiveness of an unsecured bond.  See D. 106 at 19:3–13.  Even in combination, however, these conditions would not reasonably assure Valdez Fernandez's appearance or mitigate the seriousness of the danger that Valdez Fernandez poses if released.  The Court notes that Valdez Fernandez resided with Perez at their Bronx apartment when the offense that led to her arrest occurred.  Det. Hrg. Ex. 1 at 3; D. 112-2 at 2.  Moreover, Perez drove Valdez Fernandez to and picking her up from drug transactions with the CS in June 2022.  Id. at 2; Det. Hrg. Ex. 2 at 2.  Nor is the Court convinced that home detention with electronic monitoring is sufficient to prevent Valdez Fernandez from taking other acts to further or protect any drug trafficking operation.  Given the incentive to avoid a lengthy minimum mandatory sentences in two jurisdictions, the Court also doubts whether surrender of Valdez Fernandez's passport and the secured bond is sufficient to prevent Valdez Fernandez from fleeing.  For similar reasons, no

condition or combination of conditions will assure the safety of the community particularly given Valdez Fernandez's significant ties abroad, her role in the execution of the trafficking charged here and her recent, large scale transaction in New York, the weight of the evidence against her and the substantial sentence(s) she faces.

For all of these reasons and after *de novo* review, the Court finds, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure Valdez Fernandez's appearance and, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of others and the community.

## <u>Conclusion</u>

Accordingly, the Court DENIES the appeal of the Detention Order, D. 112, and that Detention Order shall remain in place pending trial.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
